[Cite as *State v. Isenogle*, 2022-Ohio-1257.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2021CA00079 |
| | : | |
| MATTHEW RYAN ISENOGLE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
Common Pleas, Case No.
2021CR0728A

JUDGMENT:                    AFFIRMED; CASE REMANDED

DATE OF JUDGMENT ENTRY:      April 14, 2022

APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

KYLE L. STONE                              KATHLEEN O. TATARSKY
STARK COUNTY PROSECUTOR                     236 Third St. SW
                                           Suite 100 Carnegie Building
LISA A. NEMES                              Canton, OH 44702
110 Central Plaza South, Suite 510
Canton, OH 44702-1413

*Delaney, J.*

{¶1} Defendant-Appellant Matthew Ryan Isenogle appeals the June 18, 2021 sentencing judgment entry of the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

### Indictment

{¶2} On April 8, 2021, the Stark County Grand Jury returned a secret indictment against Defendant-Appellant Matthew Ryan Isenogle for four counts of criminal activity:

### COUNT ONE

The grand jurors of Stark County, Ohio, by virtue of their aforesaid authority and oaths, do find and present that: **MATTHEW RYAN ISENOGLE** on or about November 26, 2020 in the County of Stark, Ohio aforesaid, did knowingly manufacture or otherwise engage in any part of the production of a controlled substance, and the drug involved in the violation of division (A) of this section was any compound, mixture, preparation, or substance included in Schedule I or II, with the exception of methamphetamine or marihuana, to wit: methamphetamine a Schedule II drug and/or did aid or abet each other in so doing, in violation of Section 2925.04(A)(C)(2) of the Revised Code, a Felony of the Second Degree, against the peace and dignity of the State of Ohio.

### COUNT TWO

* * * **MATTHEW RYAN ISENOGLE** on or about November 26, 2020 in the County of Stark, Ohio aforesaid, did knowingly assemble or possess one or

more chemicals that may be used to manufacture a controlled substance in Schedule I or II with the intent to manufacture a controlled substance in Schedule I or II, to wit: methamphetamine, as Schedule II drug and the chemical or chemicals assembled or possessed in violation of division (A) of this section may be used to manufacture methamphetamine, in violation of Section 2925.041(A)(C) of the Revised Code, a Felony of the Third Degree, against the peace and dignity of the State of Ohio.

## COUNT THREE

* * * **MATTHEW RYAN ISENOGLE** on or about November 26, 2020 in the County of Stark, Ohio aforesaid, did knowingly obtain, possess, or use a controlled substance or a controlled substance analog and the drug involved in the violation is a compound, mixture, preparation, or substance included in Schedule I or II, to wit: methamphetamine, a Schedule II drug and the amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount [sic] abet each other in so doing, in violation of Section 2925.11(A)(C)(1)(b) of the Revised Code, a Felony of the Third Degree, against the peace and dignity of the State of Ohio.

## COUNT FOUR

* * * **MATTHEW RYAN ISENOGLE** on or about November 26, 2020 in the County of Stark, Ohio aforesaid, did knowingly obtain, possess, or use a controlled substance or a controlled substance analog and and [sic] the drug involved in the violation was a fentanyl-related compound * * *, in

violation of Section 2925.11(A)(C)(11)(a) of the Revised Code, a Felony of the Fifth Degree, * * *.

{¶3} Isenogle entered a plea of not guilty to the charges. After his request for the bill of particulars, the State responded as to Count One:

**Count 1: Illegal Manufacture of Drugs, § 2925.04(A)(C)(2)**

That on or about 11/26/2020, and at the location of 6025 Whipple Ave NW, North Canton, OH 44720, Stark County, the Defendant, Matthew Ryan Isenogle, did knowingly manufacture or otherwise engage in any part of the production of a controlled substance, and the drug involved in the violation of division (A) of this section was any compound, mixture, preparation, or substance include in Schedule I or II, with the exception of methamphetamine or marihuana, to wit: methamphetamine a Schedule II drug and/or did aid or abet each other in so doing, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

## Jury Trial

{¶4} The matter proceeded to a jury trial on June 8 and 9, 2021. The following facts were adduced at trial.

## Backpack Meth Lab

{¶5} On November 26, 2020, Officer Ryan Mack with the Jackson Township Police Department was dispatched to a scrap yard located at 6025 Whipple Avenue NW in Canton, Ohio. The owner of the scrap yard had called the police when she observed two men inside a running vehicle parked in the yard. The men appeared to be passed out.

{¶6} Officer Mack and another officer approached the vehicle, which was running and in reverse. There were two male occupants. Officer Mack approached the passenger's side when the passenger woke up and he identified himself as Isenogle. Isenogle's speech was very lethargic as if from slumber or impairment due to drugs or alcohol. The man in the driver's seat was Nicholas Conley. Isenogle and Conley were removed from the vehicle.

{¶7} Conley was the registered owner of the vehicle, and he gave the officers permission to search the vehicle. On the floor of the back of the vehicle, Officer Mack found a backpack with a two-liter bottle filled with a liquid and other substances inside. He stopped searching the vehicle and put the two-liter bottle on the top of the vehicle. His supervisor was concerned the bottle might be a one-pot for cooking methamphetamine, so an officer from the Stark County Sheriff's Department with specialized training was called to the scene.

{¶8} Deputy Sheriff Jarrod Blanc assigned to the Stark County Metropolitan Narcotics Unit arrived on the scene. He had specialized training on how to safely disassemble methamphetamine labs. He observed the two-liter bottle containing a clear liquid and white sludge sitting on the top of the vehicle, which based on his training and experience, appeared to be a one-pot meth lab. Using his training, he collected the contents of the two-liter bottle to be sent to the crime lab and safely disposed of the remainder of the bottle. The contents of the bottle were determined to be 14.63 grams of methamphetamine, a Schedule II substance. After the two-liter bottle had been disassembled, Agent Blanc took over the investigation and continued the search of the vehicle.

{¶9} In the front compartment on the center console, Agent Blanc found a folded piece of paper containing a tan-in-color substance. It appeared to Agent Blanc to be some sort of opioid, which testing determined to be 0.12 grams of fentanyl. He moved to the trunk area of the vehicle and found a trash bag with "lab trash" associated with the production of methamphetamine: an empty box of instant cold packs, Walgreens Wall-Phed nasal decongestant, an empty container of AA lithium batteries, a wrapper to a bottle of muriatic acid, and Zippo lighter fluid.

**Hotel Meth Lab**

{¶10} Conley was interviewed at the scene by the Jackson Township Police Department officers and it was determined there may be another meth lab at the Red Roof Inn located in Jackson Township, Ohio. The room was registered to Conley and he gave Agent Blanc permission to search the room. Officer Mack reported to the Red Roof Inn with Agent Blanc where they used the key provided by Conley to open the door and search the two-bed room. On the two beds, there were large amounts of clothing and appeared to be occupied by two people but there was nothing identifying that the property belonged to Isenogle. The officers found a backpack in the room that contained chemicals typically located in a meth lab, but there were no identifying marks on the backpack. In the bathroom, Officer Mack observed a two-liter bottle with hoses coming from the top sitting on the top of the toilet tank. Agent Blanc described it as an acid gas generator used in the production of methamphetamine. Crime lab testing showed traces of methamphetamine on the bottle.

{¶11} Agent Blanc interviewed Isenogle who stated he was staying at the Red Roof Inn with Conley. The State played two phone calls placed from Isenogle's account

with the Stark County Jail for the jury. (State's Exhibits P-1 and P-2). Isenogle identified himself in the call and Agent Blanc identified Isenogle's voice in the phone calls. In one call, Isenogle indicated he had been living in the Red Roof Inn prior to being in jail. He asked the recipient of the call for money because he had paid all week at the Red Roof Inn. In the second call, Isenogle admitted to taking fentanyl with Conley in the vehicle. He told the recipient of the call that the items found by the police in Conley's car belonged to Conley. He admitted that he had been staying at the Red Roof Inn prior to November 26, 2020 and the room had cost him $70 per night.

### Crim.R. 29 Motion

{¶12} At the close of the State's case, Isenogle moved for a Crim.R. 29 motion for acquittal. The first matter he raised was Count One of the indictment, where the State charged Isenogle under R.C. 2925.04(A)(C)(2). R.C. 2925.04(A)(C)(2) was applicable to every other Schedule I or II drug but for marijuana and methamphetamine, and the evidence in the case regarded only the manufacture of methamphetamine. R.C. 2925.04(A)(C)(3) was applicable to methamphetamine. Isenogle argued that because the State's evidence was only to participation in the manufacture of methamphetamine, there was insufficient evidence under R.C. 2925.04(A)(C)(2). Second, there was no evidence that Isenogle did anything more than ride in the car with Conley or stay in Conley's hotel room. The trial court denied the motion.

### Jury Instructions and Verdict Form

{¶13} Isenogle rested without presenting evidence. The trial court charged the jury and relevant to this appeal, as to Count One:

Count One: Illegal Manufacturing of Drugs

The Defendant is charged with one count of illegal manufacture of drugs. Before can you find [sic] the Defendant guilty, you must find beyond a reasonable doubt that one or about the 26th day of November, 2020, in Stark County, Ohio, the Defendant knowingly manufactured or otherwise engaged in any part of the production of a controlled substance, and the drug involved was any compound, mixture, preparation or substance, to wit: methamphetamine, or did aid or abet another in doing so.

(T. 218-219).

{¶14} After the trial court charged the jury but before closing arguments, Isenogle requested the jury instructions be modified to reflect that the State charged Isenogle with a violation of R.C. 2925.04(A)(C)(2), not 2925.04(A)(C)(3). The trial court denied the request because Isenogle did not object to the jury instructions before the jury had been charged with the jury instructions.

{¶15} The jury was provided the following verdict form as to Count One:

WE, THE JURY IN THIS CASE, DULY IMPANELED AND SWORN, DO FIND THE DEFENDANT, MATTHEW ISENOGLE *_____OF ILLEGAL MANUFACTURE `OF DRUGS, PURSUANT TO R.C. 2925.04(A)(C)(3).

### Jury Verdict

{¶16} After deliberation, the jury returned verdicts finding Isenogle guilty of Count One, Illegal Manufacture of Drugs, and Count Four, Possession of Fentanyl-Related Compound. The jury found Isenogle not guilty of Count Two, Illegal Assembly or Possession of Chemicals by the Manufacture of Drugs, and Count Three, Aggravated Possession of Drugs.

{¶17} The trial court set the matter for a sentencing hearing. Isenogle renewed his Crim.R. 29 motion as to Count One and requested the trial court to dismiss the charge. The trial court denied the motion.

### Motion to Amend Indictment

{¶18} On June 10, 2021, the State filed a motion to amend the indictment and bill of particulars to correct the statute from R.C. 2925.04(A)(C)(2) to 2925.04(A)(C)(3) in Count One. The State argued Isenogle would not suffer any prejudice because the amendment did not alter the name or substance of the offense charged in the indictment, nor did it alter the level of the offense. It was merely a typographical error. Further, the jury was verbally instructed on the correct subsection and the jury was provided the correct jury instructions and verdict form.

{¶19} The trial court granted the motion on June 14, 2021.

### Sentencing Hearing

{¶20} Isenogle appeared for the sentencing hearing on June 14, 2021. On Count One, the trial court sentenced him to a minimum of five years in prison and on Count Four, the trial court sentenced him to twelve months in prison. The sentences were to be served concurrently, for an aggregate mandatory minimum prison term of five years up to a maximum prison term of seven and a half years.

{¶21} At the conclusion of the sentencing hearing, Isenogle objected to the State's motion for an amendment of the charges because it changed the nature and identity of the charge.

**Journalization of Verdict and Sentencing Judgment Entry**

{¶22} On June 18, 2021, the trial court journalized the verdict. It stated in pertinent part:

This day, June 8, 2021, this cause having been regularly assigned for Trial, came on for hearing before the Jury, the same being duly impaneled and sword, upon the Indictment for the crimes of Illegal Manufacturing of Drugs, 1 Ct. [R.C. 2925.04(A)(C)(2)] * * *.

* * *

It was the unanimous verdict of the Jury that the defendant is guilty of the crimes of Illegal Manufacture of Drugs, 1 Ct. [R.C. 2925.04(A)(C)(2)] * * *.

{¶23} Also, on June 18, 2021, the trial court filed the Sentencing Judgment Entry. It stated in relevant part:

This day, June 14, 2021, came the defendant, MATTHEW RYAN ISENOGLE, in the custody of the Sheriff, accompanied by his counsel, Ty Graham, Esq., having heretofore been found guilty on June 9, 2021 by a jury of the crimes of Illegal Manufacture of Drugs, 1 Ct. [R.C. 2925.04(A)(C)(2)] * * *.

* * *

The Court finds that the Defendant has been found guilty of Illegal Manufacture of Drugs, 1 Ct., a violation of Revised Code Section 2925.04(A)(C)(2), a felony of the second degree subject to the mandatory prison term under division (F) of Section 2929.13 of the Ohio Revised Code.

* * *

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the defendant shall serve an indefinite mandatory minimum prison term of five (5) years on the charge of Illegal Manufacture of Drugs, 1 Ct. [R.C. 2925.04(A)(C)(2)](F2), as contained in Count One, * * *.

{¶24} On June 25, 2021, the trial court issued a nunc pro tunc of the journalization of the verdict. The nunc pro tunc judgment entry, however, referred to the charge in Count One as "R.C. 2925.04(A)(C)(2)."

{¶25} Isenogle filed an appeal of the June 18, 2021 judgment entry of conviction.

**ASSIGNMENTS OF ERROR**

{¶26} Isenogle raises three Assignments of Error:

{¶27} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN PERMITTING THE STATE TO AMEND COUNT ONE OF THE INDICTMENT/BILL OF PARTICULARS FOLLOWING THE VERDICT OF THE JURY.

{¶28} "II. THE JURY DID NOT PRESENT SUFFICIENT EVIDENCE ON COUNT ONE OF THE INDICTMENT – ILLEGAL MANUFACTURE OF DRUGS UNDER R.C. 2925.04(A)(C)(2).

{¶29} "III. THE JURY'S VERDICT ON COUNT ONE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

**I.**

{¶30} In his first Assignment of Error, Isenogle contends the trial court erred when it permitted the State to amend Count One of the indictment and bill of particulars.

{¶31} Crim. R. 7(D) provides:

The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. Where a jury is discharged under this division, jeopardy shall not attach to the offense charged in the amended indictment, information, or complaint. No action of the court in refusing a continuance or postponement under this division is reviewable except after motion to grant a new trial therefor is refused by the trial court, and no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted.

{¶32} This Court has consistently held that although Civ.R. 7(D) permits most amendments, it flatly prohibits amendments which change the name or identity of the crime charged. *State v. Merritt*, 5th Dist. Richland No. 2020 CA 0063, 2021-Ohio-2847,

2021 WL 3674080, ¶ 47 citing *State v. O'Brien*, 30 Ohio St.3d 122, 126, 30 OBR 436, 508 N.E.2d 144 (1987). A trial court commits reversible error when it permits an amendment which changes the name or identity of the offense charged, regardless of whether the defendant suffered prejudice. *State v. Smith*, Franklin App. No. 03AP–1157, 2004-Ohio-4786, 2004 WL 2008465, at ¶ 10. *See, also, State v. Headley*, 6 Ohio St.3d 475, 6 OBR 526, 453 N.E.2d 716. "Whether an amendment changes the name or identity of the crime charged is a matter of law." *State v. Cooper*, 4th Dist. Ross App. No. 97CA2326, 1998 WL 340700 (June 25, 1998), citing *State v. Jackson*, 78 Ohio App.3d 479, 605 N.E.2d 426 (1992). The issue before this Court is whether the State's amendment from one subparagraph of R.C. 2925.04(A)(C) to another subparagraph of the same subsection changed the name or identity of the crime charged within the meaning of Crim.R. 7(D).

{¶33} The indictment and bill of particulars stated Isenogle violated R.C. 2925.04(A)(C)(2). The statute reads:

(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.

* * *

(2) Except as otherwise provided in this division, if the drug involved in the violation of division (A) of this section is any compound, mixture, preparation, or substance included in schedule I or II, with the exception of methamphetamine or marihuana, illegal manufacture of drugs is a felony of the second degree, and, subject to division (E) of this section, the court shall

impose as a mandatory prison term a second degree felony mandatory prison term.

{¶34} The trial court granted the State's motion to amend the indictment and bill of particulars to R.C. 2925.04(A)(C)(3), which reads:

(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.

* * *

(C)(3) If the drug involved in the violation of division (A) of this section is methamphetamine, the penalty for the violation shall be determined as follows:

(a) Except as otherwise provided in division (C)(3)(b) of this section, if the drug involved in the violation is methamphetamine, illegal manufacture of drugs is a felony of the second degree, and, subject to division (E) of this section, the court shall impose a mandatory prison term on the offender determined in accordance with this division. Except as otherwise provided in this division, the court shall impose as a mandatory prison term a second degree felony mandatory prison term that is not less than three years. If the offender previously has been convicted of or pleaded guilty to a violation of division (A) of this section, a violation of division (B)(6) of section 2919.22 of the Revised Code, or a violation of division (A) of section 2925.041 of the Revised Code, the court shall impose as a mandatory prison term a second degree felony mandatory prison term that is not less than five years.

{¶35} Isenogle argues that when the State amended the indictment and the bill of particulars, it changed the identity of the crime charged. He states he was convicted of a crime never presented to the grand jury, never charged in the indictment, and never amended prior to his conviction. The verdict form presented to the jury identifying the statute as the R.C. 2925.04(A)(C)(3) was the only time in the proceedings the State correctly identified the statute upon which it argued Isenogle should be convicted. Further, Isenogle mentions, and this Court also discovered, the original and nunc pro tunc sentencing entries filed after the State was granted its motion to amend continued to use the incorrect statute, R.C. 2925.04(A)(C)(2).

{¶36} The State contends that its amendment of the indictment and bill of particulars complied with Crim.R. 7(D). It states that considering the details in the indictment and bill of particulars beyond the typographical error as to the statutory citation, in conjunction with the evidence presented at trial, Isenogle had ample warning and suffered no surprise or prejudice by the amendment.

{¶37} Reviewing the indictment and the bill of particulars in consideration of the arguments raised in Isenogle's appellate brief, we find the amendment did not change the name or identity of the crime charged. R.C. 2925.04(A) prohibits the illegal manufacture of drugs, stating that, "[n]o person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance." The subparagraphs of R.C. 2925.04(A)(C) more specifically describe the prohibited controlled substances. R.C. 2925.04(A)(C)(2) excepts the manufacture of methamphetamine. R.C. 2925.04(A)(C)(3) applies to the production of methamphetamine. Violations of both are second degree felonies. While the State cited

R.C. 2925.04(A)(C)(2), which excepts methamphetamine, the only drug described in Count One of the indictment and bill of particulars was methamphetamine ("to wit: methamphetamine a Schedule II drug"). The indictment and bill of particulars clearly indicated methamphetamine was the controlled substance Isenogle had allegedly knowingly manufactured or otherwise engaged in any part of the production.

{¶38} Despite the incorrect reference to R.C. 2925.04(A)(C)(2), the substantive information stated in the indictment and bill of particulars provided Isenogle with ample warning that he was charged with a violation of the illegal manufacture of methamphetamine pursuant to R.C. 2925.04(A). *See State v. Campbell*, 100 Ohio St.3d 361, 2003-Ohio-6804, 800 N.E.2d 356, ¶ 6. The amendment did not change the name and the identity of the charged offense. The difference between the subparagraphs of R.C. 2925.04(A)(C) is the type of prohibited controlled substance. The only controlled substance identified by the State as to the illegal manufacture of drugs was methamphetamine.

{¶39} The evidence at trial as to Count One regarded only the illegal manufacture of methamphetamine. The jury instructions and verdict form for Count One correctly referenced R.C. 2925.04(A)(C)(3). The June 18, 2021 and June 25, 2021 sentencing judgment entries issued after the trial court granted the amendment of the indictment and bill of particulars, however, refer to "R.C. 2925.04(A)(C)(2)" instead of R.C. 2925.04(A)(C)(3). We sua sponte remand the case for correction of the trial court's June 18, 2021 and June 25, 2021 sentencing judgment entries.

{¶40} Trial courts retain jurisdiction to correct clerical errors in judgment entries so that the entries accurately reflect the trial court's decision. *State v. Davidson*, 8th Dist.

Cuyahoga No. 110625, 2022-Ohio-694, 2022 WL 715095, ¶ 11 citing *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19; Crim.R. 36 ("[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time"). Clerical mistakes refer to mistakes or omissions that are "mechanical in nature and apparent on the record" and do not address a legal decision or judgment. *Id*. citing *State v. Brown*, 136 Ohio App.3d 816, 820, 737 N.E.2d 1057 (3rd Dist.2000), citing *Dentsply Internatl., Inc. v. Kostas*, 26 Ohio App.3d 116, 118, 498 N.E.2d 1079 (8th Dist.1985). While courts have inherent authority to correct clerical errors in judgment entries so that the record is accurate, "nunc pro tunc entries 'are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided or what the court intended to decide.'" *State ex rel. Mayer v. Henson*, 97 Ohio St.3d 276, 2002-Ohio-6323, 779 N.E.2d 223, ¶ 14, quoting *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164, 656 N.E.2d 1288 (1995).

{¶41} Because the trial court granted the amendment of the indictment and bill of particulars on June 14, 2021, which we have affirmed, the June 18, 2021 and June 25, 2021 sentencing entries contain clerical errors that can be corrected through a nunc pro tunc entry. The sentencing entries should be corrected to reflect R.C. 2925.04(A)(C)(3). Therefore, we sua sponte remand the matter to the trial court to issue a nunc pro tunc entry that shows Isenogle's conviction under R.C. 2925.04(A)(C)(3).

{¶42} Isenogle's first Assignment of Error is overruled.

## II. and III.

{¶43} In his second and third Assignments of Error, Isenogle argues his conviction for R.C. 2925.04(A)(C)(3) is against the manifest weight and sufficiency of the evidence. We disagree.

{¶44} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶45} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the

evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶46} Isenogle argues in the first instance that his conviction for the illegal manufacture of drugs was against the sufficiency and manifest weight of the evidence because he was charged with a violation of R.C. 2925.04(A)(C)(2), which excepted methamphetamine. The evidence presented at trial was exclusively related to the illegal production of methamphetamine. As we discussed in our resolution of the first Assignment of Error, we find no error as to the amendment of the charge.

{¶47} In the second instance, Isenogle contends his conviction for the illegal manufacture of drugs was against the sufficiency and manifest weight of the evidence because the State did not establish that he knowingly manufactured or otherwise engaged in any part of the production of methamphetamine, or aided and abetted in the illegal manufacture of methamphetamine. He contends the State did not present any direct evidence tying Isenogle to the one-pot meth lab.

{¶48} Isenogle was convicted of aiding and abetting with the illegal manufacture of drugs. R.C. 2923.03(A)(2) states, "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * Aid or abet another in committing the offense." R.C. 2925.04(A)(C)(3) reads:

> (A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.
>
> * * *

(C)(3) If the drug involved in the violation of division (A) of this section is methamphetamine, the penalty for the violation shall be determined as follows:

* * *

{¶49} The police found Isenogle passed out in Conley's vehicle. After a search of the vehicle, the police discovered a backpack containing a two-liter bottle used in the production of methamphetamine. Lab trash associated with the production of methamphetamine was found in the trunk of Conley's vehicle. Further investigation brought the police to a hotel room at the Red Roof Inn, where Isenogle admitted to Agent Blanc and in a jail phone call that he was staying with Conley in the hotel room. Isenogle also said in the phone call that he had paid $70.00 a night for the room. The two-bed room had a single bathroom. In the bathroom, on top of the toilet, the police discovered equipment for the manufacture of methamphetamine. The room contained clothes and lab trash associated with the production of methamphetamine.

{¶50} The jury in this case was presented with multiple charges: illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, aggravated possession of drugs, and possession of a fentanyl-related compound. The jury found Isenogle not guilty of illegal assembly or possession of chemicals for the manufacture of drugs and aggravated possession of drugs. The jury's not guilty findings show it considered the evidence and discerned the State demonstrated beyond a reasonable doubt that Isenogle aided and abetted the illegal manufacture of methamphetamine. There was direct evidence that Isenogle was found in the vehicle containing a two-liter bottle containing methamphetamine and meth lab trash. However,

Isenogle's presence in Conley's car and the discovery of the methamphetamine and methamphetamine-related debris was not in isolation. The inference that Isenogle aided and abetted in the illegal manufacture of drugs coalesced when the investigation of Conley's car led the police to the Red Roof Inn. Isenogle admitted he was staying with Conley at the hotel and that he had paid for the hotel room. In the hotel room's only bathroom, the remains of a meth lab sat openly on top of the toilet. Meth lab trash was found in the room, along with the clothes of two occupants. Isenogle's admitted occupancy in the hotel room and that he paid for the hotel room where a meth lab was found substantiated the inference that he aided and abetted the manufacture of methamphetamine.

{¶51} Upon our review, we find sufficient evidence to support the conviction for the correctly amended charge of R.C. 2925.04(A)(C)(3), and no manifest miscarriage of justice.

{¶52} Isenogle's second and third Assignments of Error are overruled.

## CONCLUSION

{¶53} The judgment of the Stark County Court of Common Pleas is affirmed, and

the matter remanded for further proceedings consistent with this Opinion and law.

By: Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.